UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAMANTHA SEWARD, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:05-CV-601-SEB-JPG |
| ) | |
| ALEXANDER PROPERTIES GROUP, ) | |
| INC., ) | |
| Defendant. ) | |

**ENTRY GRANTING MOTION TO DISMISS**

This matter comes before the Court on Defendant Alexander Properties Group, Inc.'s ("APG") Motion to Dismiss, pursuant to Rule 12(b)(2) and Rule 12(b)(3) of the Federal Rules of Civil Procedure. APG asserts a lack of personal jurisdiction and improper venue regarding Plaintiff Samantha Seward's ("Seward") Complaint claiming violations of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), as contained in Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended, 42 U.S.C. § 1981a. Plaintiff has alleged that Defendant violated the PDA by discriminating against Seward in her employment on the basis of her pregnancy.[1] For the reasons outlined below, we **GRANT** APG's Motion to Dismiss for lack of personal jurisdiction.

---

[1] Both parties failed to notice that the exhibits attached to the Complaint do not pertain, to the best of our knowledge, to Plaintiff's case. As a result, we will proceed based on the allegations set forth in the Complaint and pay no heed to the aforementioned incorrect documents.

Factual and Procedural Background

The underlying dispute involves the alleged wrongful termination of Seward's employment by Defendant APG based on Seward's pregnancy.  Defendant APG is a Georgia corporation with its principal place of business in Georgia. [Def.'s Mem. in Supp. of its Mot. to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue (hereinafter "Def.'s Memo"), p. 2.]  APG is a residential property management company managing apartment complexes in Georgia, Florida, Tennessee, North and South Carolina, and Alabama.  Id. (citing Alexander Aff. ¶ 5).  Plaintiff Seward was hired by APG on or about October 20, 2003, to be a Regional Property Manager.  Compl. ¶ 9. Seward's property management portfolio consisted of three properties in Atlanta, Georgia; one property in Knoxville, Tennessee; and two properties in Lexington, Kentucky. [Pl.'s Opp'n to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue (hereinafter "Pl.'s Memo"), p. 2.]  As a Regional Property Manager, Seward was expected "to manage her assigned properties to ensure that management's goals and objectives were being achieved and that the properties were being managed in accordance with [APG's] procedures and policies."  Def.'s Memo, p. 3.  To achieve this objective, Seward was expected to visit her assigned properties on a regular basis.  Id.

Prior to being hired by APG, Seward resided in Indianapolis, Indiana, but upon accepting employment with APG she relocated to Georgia.  Pl.'s Memo, pp. 1–2.  Seward resided in the Atlanta suburb of Cumming, Georgia and worked in APG's corporate office located in Atlanta.  Def.'s Memo, p. 3.  In November 2003, Seward notified her

supervisor, Melanie Young ("Young"), that she was four (4) weeks pregnant. Pl.'s Memo, p. 2. Young, Curt Mann, Pete Alexander, and Andrew Alexander[2] advised Seward that due to her pregnancy she could work from Indianapolis, Indiana, where Seward began working in February 2004. Id. Seward understood that after giving birth to her child she would continue working in Indianapolis and would not return to the Atlanta area; however, Seward did not discuss this issue with APG at any time. Seward Aff. ¶ 12.

As a result of her relocation to Indianapolis, Seward's management portfolio was modified to include two properties in Florence, Kentucky; two properties in Lexington, Kentucky; three properties in Nashville, Tennessee; and one property in Knoxville, Tennessee. Id. These properties were within driving distance of Indianapolis, which enabled Seward to perform all her necessary job functions from her new location. Id. Additionally, APG paid for facsimile and internet services for Seward's home, as well as the office supplies Seward used when managing the properties in her portfolio. Pl.'s Memo, p. 9 (citing Seward Aff. ¶ 8). Finally, Seward claims that Tony Enricho ("Enricho")[3] requested that she solicit business for APG from her former employer, Cap

---

[2] Plaintiff in her submitted documents does not indicate the positions that are held by Curt Mann and Pete Alexander within the corporate structure of APG. Andrew Alexander is an owner of APG. Alexander Aff. ¶ 3.

[3] Plaintiff refers to Enricho as "former Chief Operating Officer." Pl.'s Memo, p. 3. We infer that Enricho was Chief Operating Officer at the time of the events mentioned, but is no longer in that position with the company.

Reit,[4] which Seward attempted to do.  Id. at 9; Seward Aff. ¶ 9.

On or about April 21, 2004, Seward notified Enricho and Joe Pietzyk[5] ("Pietzyk") that her physician had advised her that due to her pregnancy she should not travel after April 30, 2004, and should begin her maternity leave on or about July 15, 2004.  Id. at 3; Seward Aff. ¶ 10.  Until that July date, APG expected, and Seward agreed, that Seward was to manage her properties via telephone and e-mail.  Pl.'s Memo, pp. 3–4; Def.'s Memo, p. 3.  Seward contends that Pietzyk stated he would handle her properties that needed personal attention.  Pl.'s Memo, pp. 3–4.

On or about May 3, 2004, Defendant APG notified Seward that her position with the company was being eliminated.  Id. at 4; Def.'s Memo, p. 4.  The notification of termination of employment was communicated via telephone by Enricho and Debbie Hennings ("Hennings").[6]  Pl.'s Memo, p. 4; Def.'s Memo, p. 4.  Seward contends she was terminated because of her pregnancy; however, APG argues that Seward's position was eliminated as the result of a company reorganization following an announcement that several executives were leaving APG.

## Legal Analysis

I.      *Rule 12(b)(2) Standard of Review*

---

[4] Cap Reit is a property management company in Indianapolis, Indiana.  Pl.'s. Memo, p. 9; Seward Aff. ¶ 9.

[5] Plaintiff and Defendant do not mention Pietzyk's position with APG in their briefings.

[6] Hennings is Vice President, Human Resources for APG.  Hennings Aff. ¶ 3.

Rule 12(b)(2) permits the dismissal of a claim for lack of jurisdiction over the person. FED. R. CIV. P. 12(b)(2).[7] In considering a motion for lack of personal jurisdiction, the Court examines the sufficiency of the Complaint and not the merits of the lawsuit. Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, 149 F. Supp. 2d 615, 623 (S.D. Ind., 2001) (Barker, J.); Gibson v. City of Chicago, 910 F.2d 1510, 1520-21 (7th Cir. 1990). All well-pleaded factual allegations are accepted as true, and we draw all reasonable inferences in favor of the plaintiff, if they weigh on the issue of personal jurisdiction. Int'l Med. Group, 149 F. Supp. 2d at 623; Dawson v. Gen. Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992). However, if a complaint consists of conclusory allegations unsupported by factual assertions, then it would fail even the liberal standard of Rule 12(b). Int'l Med. Group, 149 F. Supp. 2d at 623; Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 792 (7th Cir. 1996). Additionally, the Court may consider affidavits and all other documentary evidence, which have been filed, but all conflicts must be construed in favor of the plaintiff. Int'l Med. Group, 149 F. Supp. 2d at 623; McIlwee v. ADM Indus., Inc., 17 F.3d 222, 223 (7th Cir. 1994).

II.   *Personal Jurisdiction Analysis*

Federal courts are courts of limited jurisdiction, so the plaintiff must prove

---

[7] Fed. R. Civ. P. 12(b)(2) provides:
> (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person.

personal jurisdiction exists, if it is challenged, by establishing a prima facie case that jurisdiction over the defendant is proper. Woodruff v. Gen. Conf. of Seventh-Day Adventists, 2004 WL 1660331 at *2 (S.D. Ind. 2004) (Barker, J.). In federal question cases, such as the one at bar, "the law governing personal jurisdiction parallels the rules governing service of process." Alpha Tau Omega Fraternity v. Pure Country, Inc., 185 F. Supp. 2d 951 (S.D. Ind. 2002) (Barker, J.). If the federal statute at issue does not order nationwide service of process, then personal jurisdiction exists in the district in which the court has power to enforce process. Alpha Tau Omega, 185 F. Supp. 2d at 956. Typically a federal court will then look either to a federal statute or the long-arm statute of the state in which the court sits to determine whether the defendant is amenable to such service. Id. (citing Swaim v. Moltan Co., 73 F.3d 711, 719–20 (7th Cir. 1996)).

Under the Pregnancy Discrimination Act, which is part of Title VII of the Civil Rights Act of 1964, nationwide service of process is not prescribed. See 42 U.S.C. § 2000e-5(f)(3). When such service of process is not prescribed, we turn to Rule 4 of the Federal Rules of Civil Procedure. That rule provides that unless a waiver has been obtained and filed, service upon an individual, other than an infant or incompetent person, "may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." FED. R. CIV. PROC. 4(e). In other words, we look to the long-arm statute of the forum state. Therefore, we may only exercise jurisdiction over

6

Alexander Properties Group if APG "would be amenable to process under Indiana law." Alpha Tau Omega, 185 F. Supp. 2d at 956. We conclude that it would not be.

Indiana Trial Rule 4.4(A) was amended in 2003 to include the following: ". . . a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Therefore, a plaintiff must establish only that an exercise of long-arm jurisdiction is, in fact, constitutional. Since the parties do not argue that there is any difference between the federal and state constitutional standards, we shall apply the federal due process standards. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–73 (1985).

Under federal due process, personal jurisdiction can be either specific or general. Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239, 1243 (7th Cir. 1990). Specific jurisdiction exists when the defendant's contacts give rise to the cause of action and such contacts amount to at least a minimum level to find the exercise of jurisdiction reasonable. See Gallert v. Courtalds Packaging Co., 4 F. Supp. 2d 825, 829 (S.D. Ind. 1998) (McKinney, J.) (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984)). For general jurisdiction, the defendant's contacts must be sufficiently "continuous and systematic" to make the court's jurisdiction over the defendant reasonable, although the cause of action does not arise from nor is it related to the defendant's contacts. Gallert, 4 F. Supp. 2d at 829. The general jurisdiction standard is quite high. Wilson, 916 F.2d at 1245. We look at each in turn.

      A. *Specific Jurisdiction*

Plaintiff argues that this Court should exercise specific jurisdiction over APG based upon the allegations she outlined in her briefings, see Compl. ¶¶ 9–18; Pl.'s Memo, pp. 8–10, and which we mentioned previously. See Factual and Procedural Background, supra.

A forum's exercise of specific jurisdiction over a foreign defendant is proper when the defendant has deliberately directed its activities toward forum residents, and the cause of action results from alleged injuries that "arise out of or relate to" such activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73 (1985). In the Seventh Circuit, the law is clear that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." Nu-Way Sys. v. Belmont Mktg, 635 F.2d 617, 620 (7th Cir.1980). Rather, for specific jurisdiction to exist in an employment discrimination case, the former employee must demonstrate that the *employer* has had certain minimum contacts with Indiana related to the employment. See Gallert, 4 F. Supp. 2d at 830 (citing Charlesworth v. Marco Manuf. Co., 878 F. Supp. 1196, 1200 (N.D. Ind. 1995)).

The case at bar is quite similar to the facts of Gallert. There, Gallert's only allegations in support of finding the requisite contacts were that he lived and worked in Indiana for more than 10 years while his employer, Thatcher Plastic, was headquartered in West Virginia with an office in Washington Courthouse, Ohio. Gallert, 4 F. Supp. 2d at 828, 830. Additionally, Thatcher Plastic provided Gallert with a facsimile machine and telephone line in his Indiana residence for use in connection with his employment with

8

the company; these are the same actions that Seward alleges her employer, APG, performed in this case.  The court in Gallert held that the above-listed activities were "akin to establishing an office, but they do not suffice to establish minimum employment-related contacts between Thatcher Plastic . . . and Indiana to allow for specific jurisdiction over a controversy in relation to Gallert's termination."  Id.

Other similarities between the Gallert case and ours include that Gallert made a personal decision to live in Indiana, and Gallert's employer's decisions to hire and fire Gallert did not take place in Indiana.  Id.  Finally, the court in Gallert reasoned that since the controversy there did not arise out of Thatcher Plastics's "having deliberately directed its employment activities toward Indiana residents such that it should have anticipated being brought into an Indiana court by [Gallert]," the court found no basis on which to exercise specific jurisdiction.  Gallert, 4 F. Supp. 2d at 830 (finding, however, grounds to exercise *general* jurisdiction over the defendant).

It is undisputed, here, that Seward was APG's only employee in Indiana and that she was not managing any properties in Indiana.  Seward's communication with the Atlanta office of APG from her Indiana residence via mail, telephone, and facsimile, are insufficient to establish jurisdiction over APG.  Additionally, Seward's decision to move to Indiana during her pregnancy was a personal one.  Compl. ¶ 12; Pl.'s Memo, p. 8; Def.'s Memo, p. 3.  Finally, APG's decisions to hire and terminate Seward were made in Georgia, not Indiana.  Def.'s Memo, p. 2.

We adopt the reasoning in Gallert.  Seward cannot rely on her own unilateral

activities to establish the requisite contacts for an exercise of specific jurisdiction over APG. Nu-Way Sys., 635 F.2d at 620. Furthermore, Seward has not shown that APG's contacts apart from her own are sufficient to establish jurisdiction. Therefore, we conclude there is no basis for specific jurisdiction.

### B. *General Jurisdiction*

Alternatively, Plaintiff contends that, even if specific jurisdiction does not exist, APG's "overall contacts with Indiana are sufficient to invoke general jurisdiction." Pl.'s Memo, p. 10. General jurisdiction is proper when the defendant has "continuous and systematic" contacts with the forum, Gallert, 4. F. Supp. 2d at 830–31, that are "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe, 326 U.S. at 318. The court may consider contacts both related and unrelated to the issue in dispute, even though the contacts related to the dispute are insufficient to establish specific jurisdiction alone. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984) (finding personal jurisdiction by looking at all the magazine sales in the jurisdiction regardless of their relation to the controversy).

Seward maintains that she has presented evidence of continuous and systematic contacts between APG and this state. Pl.'s Memo, p. 11. We disagree. Seward has not alleged anything beyond the facts adduced in attempting to establish specific jurisdiction, which we determined to be insufficient. Id. at 8–11. Seward's failure to muster evidence

of any other contacts not related to this dispute leaves her effort to satisfy the even higher standard of general jurisdiction short of the mark.  <u>Wilson v. Humphreys (Cayman) Ltd.</u>, 916 F.2d 1239, 1245 (7th Cir. 1990).

    III.    *Venue*

Having found an absence of evidence to support an exercise of personal jurisdiction, we shall not address Defendant's alternative motion to dismiss for improper venue.

Conclusion

For the reasons explained above, Plaintiff's attempted invocation of personal jurisdiction over APG is unavailing.  Defendant's motion to dismiss for lack of personal jurisdiction is therefore <u>GRANTED</u> without prejudice.  IT IS SO ORDERED.

Date: 11/21/2005

*(signature)*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copy to:

Lindsey Camp Edelmann
HUNTON & WILLIAMS LLP
ledelmann@hunton.com

Jeffrey B. Halbert
HASKIN LAUTER LARUE & GIBBONS
jhalbert@hlllaw.com

Annette Agius Idalski
HUNTON & WILLIAMS LLP
aidalski@hunton.com

Kenneth E. Lauter
HASKIN LAUTER LARUE & GIBBONS
klauter@hlllaw.com

Alan L. McLaughlin
BAKER & DANIELS
alan.mclaughlin@bakerd.com

Catherine A. Meeker
BAKER & DANIELS
cameeker@bakerd.com